UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
**KELLY CLARK,**　　　　　　　　　　　　　　　　　　　Case No.:

　　　　　　　　　　**Plaintiff,**　　　　　　　　　　　　　　　**COMPLAINT**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Jury Trial Demanded*

　　　-against-

**AMAZON.COM, INC.,**

　　　　　　　　　　**Defendant.**
-------------------------------------------------------------------X

　　　PLAINTIFF KELLY CLARK, by her attorney Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

　　　1.　　The nature of this action is employment discrimination on the basis of Plaintiff's race, hostile work environment, retaliation for lawful complaints of harassment and discrimination, and unequal pay in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); the New York State Human Rights Law ("NYSHRL"); the New York City Human Rights Law ("NYCHRL"); the New York State Equal Pay provisions of the N.Y. Labor Law ("NYLL"); and the Connecticut Fair Employment Practices Act ("CFEPA").

## THE PARTIES

　　　2.　　Plaintiff Kelly Clark (herein "Plaintiff") is a Black female citizen of the United States who currently resides in Fairfield County, Connecticut and who was formerly employed by Defendant Amazon.com, Inc. (herein "Defendant Amazon"). Plaintiff was subjected to disparate treatment on the basis of race, sex, pregnancy and disability, a hostile work environment on the basis of race, sex, pregnancy and disability, retaliation for protected activity, and unequal pay on

1

the basis of race and sex, all of which ultimately led to Plaintiff's termination from her position at Defendant Amazon.

3. Plaintiff is and was, at all times relevant herein, Defendant's "employee" within the meaning of all relevant Federal, State, and local laws.

4. Upon information and belief, at all times relevant herein, Defendant Amazon was and is a corporation registered in Delaware and permitted to do business in New York.

5. Defendant Amazon maintains an office at 450 W 33rd St, New York, NY 10001. At all times, Plaintiff was employed by Amazon in New York City, New York.

6. Defendant Amazon is and was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State and local laws including, but not limited to, Title VII, the Americans with Disabilities Act, the New York State Human Rights Law, the New York City Human Rights Law, the New York Labor Laws, the New York State Equal Pay Act, and the Connecticut Fair Employment Practices Act.

## JURISDICTION, VENUE & PROCEDURAL REQUIREMENTS

7. This is a civil action for monetary damages and such other relief as the Court deems just and proper based upon Defendant's discrimination against Plaintiff based on her sex, race, and disability.

8. This Court additionally has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. 1332(a).

9. This Court has original jurisdiction over Plaintiff's Federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendant.

10. Venue for this action properly lies in this district pursuant to 28 U.S.C § 1391.

11. All precedent to filing the instant action have been fulfilled. On or about October 19, 2023, Plaintiff filed a timely Charge of Discrimination with the EEOC. On or about January 29, 2025, the EEOC issued Plaintiff a Notice of Right to Sue. The Complaint in this matter was filed within 90 days of Plaintiff's receipt of her Right to Sue Notice.

12. This Complaint is additionally brought pursuant to any other cause of action which can be inferred from the facts set forth herein.

13. Plaintiff demands a jury trial.

## FACTUAL BACKGROUND

### Plaintiff has Multiple Sclerosis

14. Plaintiff was diagnosed with Multiple Sclerosis (MS) and gets regular treatment in the form of doctor's visits and chemotherapy appointments.

### Plaintiff Is Hired At Respondent Amazon

15. In or around October 2021, Plaintiff interviewed for a position at Respondent Amazon.

16. In or around November 2021, Plaintiff was offered the position of Global Head of Fashion Innovation, which she accepted. There were approximately 80 people on her team.

17. Plaintiff later learned that the Global Head of Fashion Innovation was posted as a Level 7 role, but that Plaintiff was hired as a Level 6, which meant she was paid approximately $100,000 less than she would have been paid as a Level 7. Upon commencing her job, several of Plaintiff's Level 7, non-Black co-workers repeatedly stated that her role was far more complicated and demanding than their roles. It was obvious that they could not understand why or how she was

only a Level 6. Her non-lack co-workers expressed surprise and disagreement with the fact that she was only a Level 6.

18. On or around November 30, 2021, Plaintiff officially began work at Respondent Amazon. Notably, Plaintiff was the only Black woman in a leadership role on the Marketing Team.

19. Plaintiff's direct supervisor was Head of Marketing Allie Oosta ("Supervisor Oosta").

### Amazon Allows Racist Examples at a Leadership Training

20. During a Leadership meeting in December of 2021, Plaintiff, the only Black female leadership member, was appalled when one of her white male coworkers, Justin (last name unknown) repeatedly made comments involving the words "slave owner." Respondent did nothing to address the situation.

### Plaintiff is Routinely Held to a Higher Standard Than her Non-Black Peers

21. At several other meetings, the same white male employee repeatedly stared at Plaintiff each time she spoke up and then "translated" whatever she said, "for her"— i.e., he would repeat her contributions. He did not behave in this manner towards anyone else. It was clear that he refused to take Plaintiff seriously as a member of the leadership committee.

22. Plaintiff was routinely told "they want to hear from you," and reprimanded for not speaking up at meetings, but each time she did speak up, she was ignored, blown off or stared at by her non-Black peers.

23. Respondents did nothing to respond to the obvious hostile work environment.

24. Plaintiff was further subjected to unwarranted scrutiny. For example, her supervisor demanded to review all of her emails before sending them. Non-Black members of her team were not subjected to this humiliating and unnecessary level of suspicion.

### **A Non-Black Employee is Hired as a Level 7 For a Less Demanding Position**

25. In or about late December of 2021, a non-Black female was hired as the Head of two brands. Plaintiff who was the Head of six brands, was shocked and offended to discover that this non-Black employee was hired as a Level 7.

### **Plaintiff Requests an Explanation For her Lower Title**

26. Soon thereafter, Plaintiff approached Supervisor Oosta and told her that she knew that the non-Black employee had been hired as a Level 7, when Plaintiff was only a Level 6. Plaintiff asked, "I am a level 6 and Lynn [the new Non-Black employee] is a Level 7, can you tell me why you hired me as a Level 6 versus a level 7 for my role?" Her supervisor turned red in the face and ultimately said, "That is just what we decided."

27. When the non-Black employee, Lynn Fernandez, realized that Plaintiff was a Level 6 instead of a Level 7, she told Plaintiff that she was surprised and taken aback, that Plaintiff was not a Level 7 given the relatively complexity and responsibilities of their respect positions.

### **Plaintiff Discloses her Disability to Respondent Amazon**

28. In or around late January 2022, Plaintiff met with Supervisor Oosta and the two discussed that several employees tested positive for Covid after an in-person company event.

29. Plaintiff disclosed to Supervisor Oosta that she was in an at-risk group for Covid because she had an underlying health condition.

30. The following month, when several on-site employees tested positive for Covid, Plaintiff revealed that she specifically has MS and is immuno-comprised.

### **Plaintiff has a High-Risk Pregnancy and Informs Respondent Amazon**

31. On or around March 4, 2022, Plaintiff happily discovered that she was pregnant.

32. On or around March 16, 2022, Plaintiff began experiencing severe pregnancy complications including excessive bleeding and nausea.

33. Plaintiff was immediately hospitalized and informed Supervisor Oosta that she had to miss work because she was hospitalized. Plaintiff disclosed that she was pregnant and told Supervisor Oosta that she feared she may have lost the pregnancy.

34. Plaintiff recovered for one week after she was released from the hospital.

35. A few days after her hospitalization, Plaintiff texted Supervisor Oosta informing her that she had recovered and that she had not lost her pregnancy, but that her pregnancy was high risk. A few days later when they had a verbal discussion, Plaintiff reaffirmed that her pregnancy and her own health were in danger because of her MS. Furthermore, Plaintiff could not take medications that would normally control the symptoms of her MS while she was pregnant.

36. Respondent Amazon approved Plaintiff for maternity leave that would last from September 15, 2022, to April 2023, which included four weeks of pre-birth leave before the baby was due in October.

37. Plaintiff discussed with both HR and Supervisor Oosta that she would be going on leave beginning September 15, 2022. Plaintiff followed up with Supervisor Oosta via email and in one-on-one meetings discussing the fact that she was going on leave on September 15, 2022, and discussed the preparations for her team before her departure.

38. Thereafter, during a maternity leave reassignment meeting with Supervisor Oosta's protégé, Jenn (last name unknown), Jenn disdainfully remarked to Plaintiff, "Oh wow. When I was pregnant, I didn't get 4 weeks off."

**Amazon Seeks Reasons to Terminate Plaintiff Before Her Leave**

39. As her leave approached, Plaintiff found herself being accused of various wrong doings by Supervisor Oosta, including creating an alleged "debacle," regarding an ad campaign that Supervisor Oosta herself had signed off on.

40. In or about the middle of August 2022, Plaintiff was shocked to discover that she, the only Black woman on the Leadership team, and one of the Black women who reported to her were being blamed for a campaign that allegedly relied on faulty data, even though everyone was well aware of the campaign and its data.

41. Supervisor Oosta also told Plaintiff that she had "low connection" scores. Connection scores relate to employee satisfaction at work and with their manager. Plaintiff's team had long been unhappy because job security for Amazon employees was low and cuts were rumored. Many of Plaintiff's programs were ended due to budget cuts and many of her team members had no work. Upon information and belief, many managers had low connection scores at the time due to universal problems at Amazon, but none of those employees were called out for their low scores. Additionally, Supervisor Oosta minimized all of Plaintiff's efforts to talk about team morale and connectivity scores.

### Plaintiff is Put on a Performance Improvement Plan Days Before her Maternity Leave

42. On or around August 31, 2022, Plaintiff met with Supervisor Oosta who informed her that she was being put on a Performance Improvement Plan, also known as a "FOCUS Plan" at Respondent Amazon. A FOCUS Plan is supposed to last thirty days.

43. The FOCUS Plan reprimanded Plaintiff based on criteria that she was never previously evaluated on, and that Supervisor Oosta had never stressed as important or previously claimed were lacking. For example, Plaintiff was blamed for "low morale" in the FOCUS Plan. She was also told that she was "not meeting the bar."

7

44. Plaintiff was put on a FOCUS Plan because Respondent Amazon was planning to terminate her due to her pregnancy.

45. Plaintiff asked Supervisor Oosta why she was being put on a FOCUS Plan just days before her maternity leave and asked how she was expected to complete it before her leave began.

46. Supervisor Oosta instructed Plaintiff to "just do everything" in the eight workdays between the start of the FOCUS Plan and the beginning of her maternity leave. Supervisor Oosta bizarrely claimed that she "didn't know" Plaintiff was going on maternity leave even though Plaintiff discussed the specifics of the leave with her in-person and via email in the previous months.

47. When Plaintiff reminded Supervisor Oosta that FOCUS Plans were supposed to take thirty days to complete, Supervisor Oosta made it clear that Plaintiff still would only have eight workdays to complete the FOCUS Plan if she wanted to be removed from FOCUS prior to her leave. Supervisor Oosta repeatedly told her to get it done in eight days if she wanted it to be removed from her record before her leave. Upon information and belief, Supervisor Oosta did not believe that Plaintiff would complete the FOCUS Plan.

48. Plaintiff broke down in tears at the unfair, targeted treatment against her and reminded Supervisor Oosta that she was going through an extremely difficult time with her high-risk pregnancy, and her underlying disability, and that the demands of completing a thirty-day FOCUS Plan in less than two weeks would put a significant burden on her physical and mental health.

49. In a follow up meeting about the same topic, Supervisor Oosta announced, "Jen and I cry all the time too," and ended the meeting.

50. Over the next eight workdays, Plaintiff worked extremely hard to complete the FOCUS Plan working nights, weekends, and over the Labor Day holiday.

51. Plaintiff, even though she was suffering a high-risk pregnancy, and was eight months pregnant, managed to complete all of the items on the list.

52. On Plaintiff's last day before her leave, on or around September 14, 2022, she told Supervisor Oosta that she had done everything on the list.  To her surprise, instead of removing the FOCUS, Supervisor Oosta smugly informed Plaintiff that even though she had met all the check boxes, she had to remain on the Plan for the entire duration of her maternity leave and that it would be removed when she got back.

53. Plaintiff was stunned that she was forced to complete all of the tasks over Labor Day weekend, while eight months pregnant only to have Supervisor Oosta move the goal posts.

### Plaintiff Takes Maternity Leave

54. On or around September 15, 2022, Plaintiff began her maternity leave.

55. On or around October 13, 2022, Plaintiff gave birth to her child.

### Plaintiff is Terminated While on Maternity Leave

56. On or around January 19, 2023, Plaintiff received an automated email from Respondent Amazon that she was terminated.

57. Her title was given to a white male, Ollie (last name unknown). Upon information and belief, he was given less work, fewer direct reports, and fewer programs.

58. On or around January 19, 2023, Plaintiff spoke to an HR Representative, Mary, who informed her that she was being laid off, but it would not go into effect until she was scheduled to return from leave. Thereafter, Plaintiff was locked out of her computer.

9

59. On or around April 20, 2023, Plaintiff's scheduled leave ended, and she was officially terminated.

60. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income, including, but not limited to wages, social security, and other benefits due to her.

61. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

62. Defendant Amazon acted intentionally and with malice and/or reckless indifference to Plaintiff's Federal-law, State-law, and City-law protected rights.

63. Based on Defendants' discrimination, Plaintiff is entitled to all remedies in violation of Title VII, the ADA, the NYLL, the NYSHRL, the NYCHRL, and CFEPA against all Defendants. Plaintiff shall seek attorney's fees and punitive damages.

## AS AND FOR THE FIRST CAUSE OF ACTION

*Race Discrimination in Violation of Title VII, the NYSHRL, the NYCHRL, and CFEPA Against Defendant Amazon*

64. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

65. Plaintiff was discriminated against in the terms and conditions of her employment because of her race in violation of Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

66. Plaintiff is Black and therefore is a member of a protected class. Plaintiff was qualified to work at Defendants. She satisfactorily performed the duties required by her position.

67. Defendant Amazon intentionally subjected Plaintiff to disparate treatment by requiring her to perform more and more complex work than employees similarly situated and/or by purposefully hiring Plaintiff at a title and salary lower than that granted to non-Black employees who were expected to perform the same or lower amount and level of work.

68. Defendant Amazon further subjected Plaintiff to a hostile work environment on the basis of her race by allowing white coworkers to openly disrespect her in front of managerial employees with no consequence.

69. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income, including, but not limited to wages, social security, and other benefits due to her.

70. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

71. Defendant Amazon acted intentionally and with malice and/or reckless indifference to Plaintiff's Federal-law, State-law and City-law protected rights.

72. Based on Defendants' discrimination, Plaintiff is entitled to all remedies in violation of Title VII, the NYSHRL, the NYCHRL, and CFEPA against all Defendants. Plaintiff shall seek attorney's fees and punitive damages.

**AS AND FOR THE SECOND CAUSE OF ACTION**
*Retaliation in Violation of the Title VII, the ADA,*
*the NYSHRL, the NYCHRL, and CFEPA*

73. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

74. Due to Plaintiff's taking of pre-birth leave to accommodate her pregnancy, made high-risk due to her diagnosis of Multiple Sclerosis, she was subjected to unwarranted discipline, treated less favorably than non-pregnant, non-disabled employees, and ultimately terminated.

75. Defendant Amazon, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff taking an approved, protected leave. Immediately after informing her supervisor of the dates of her leave, while she was still away on said leave.

76. Defendant Amazon knew or should have known about the retaliation and the affect it had on Plaintiff's employment but failed to take any action to stop the retaliatory conduct.

77. Defendant Amazon's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling her to punitive damages.

78. As a result of Defendant Amazon's conduct alleged herein, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

79. Additionally, Plaintiff has suffered the indignity of retaliation, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

80. As a further direct and proximate result of said unlawful employment practices and retaliation, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

81. By reason of Defendant Amazon's discriminatory retaliation, Plaintiff is entitled to all remedies available for violations of the ADA, Title VII, the NYSHRL, and the NYCHRL, and CFEPA. Plaintiff shall seek attorney's fees and punitive damages.

**AS AND FOR THE THIRD CAUSE OF ACTION**
*Unequal Pay in Violation of the New York State Equal Pay Act, NYLL*
*Labor Law §§ §§ 194, 198*

82. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

83. At all relevant times, Plaintiff was an employee and Defendants were employers within the meaning of the New York Labor Law, New York State Equal Pay Act law.

84. The acts and practices of Defendants constitute discrimination against Plaintiff in violation of the New York Labor Law, New York State Equal Pay law by unlawfully paying black employees less than white employees for equal work.

85. Defendants' violations of the New York Labor Law, New York State Equal Pay law were willful, entitling Plaintiff to all available damages, including statutory liquidated damages.

## **RELIEF DEMANDED**

**WHEREFORE**, the Plaintiff respectfully requests judgment:

a. Declaring that the Defendants engaged in unlawful discrimination, unequal pay and retaliation in violation of the Federal, New York State, New York City, and Connecticut statutes cited herein;

b. Declaring Defendants' conduct complained herein to be in violation of the Plaintiffs' rights under the New York Labor Law, and its regulations;

c. Awarding overtime, compensatory, punitive and liquidated damages;

d. Awarding Plaintiff prejudgment and post-judgment interest;

e. Awarding the cost, disbursements and legal fees of this action, interest from the date of the verdict rendered hereon and reasonable attorney's fees.

f. Granting such other and further relief as this Court may deem just and proper under the circumstances.

Dated: New York, New York
April 29, 2025

Respectfully submitted,

GODDARD LAW PLLC
*Attorney for Plaintiff*

By: */s/ Megan S. Goddard*
Megan S. Goddard, Esq.
39 Broadway, Suite 1540
New York, NY 10006
Ofc: 646-964-1178
Fax: 212-208-2914
Megan@goddardlawnyc.com